FERGUSON v. HARRISON.

1. DEED—CONSIDERATION—PAROL EVIDENCE.—Where the complaint alleges that the deed under which defendant holds was executed and received with fraudulent intent, parol testimony is admissible to show that in addition to the expressed consideration of love and affection, the deed was also based upon the grantee's agreement to discharge certain debts of the grantor.

2. APPEAL—NEW QUESTIONS.—Where the complaint is framed, the action

revived, and the cause tried on the allegation of the original defendant's title deed to the land in question, this court cannot consider the objection first raised on appeal, that others had an interest in the land which prevented the original defendant from executing mortgages, assailed in the complaint on other grounds.

3. CONVEYANCE PARTLY VOLUNTARY—TRUST—HOMESTEAD.—Where a debtor conveyed to his wife land worth $3,000 on the consideration of love and affection, and her agreement to secure two of his creditors, whose claims aggregated $1,400, by mortgage of this land, and the wife executed the two mortgages, including therein some of her own personal indebtedness to these two mortgagees, reserving a homestead, this court *held* that the wife took the land charged with the duty of paying the two debts of her husband as agreed, and of applying the remainder to all of his creditors *pro rata;* that neither the husband nor the wife, under her deed from him, or in her own behalf, could claim any homestead rights; that the deed was fraudulent, as to the husband's creditors, to the extent of the value of the land in excess of the $1,400 indebtedness provided for; and that the wife could not secure her own obligations by a mortgage of this land.

Before IZLAR, J., Greenville, March, 1893.

The opinion states the case.

*Messrs. Cothran, Wells, Ansel & Cothran,* for appellants.

*Messrs. Perry & Heyward* and *H. J. Haynsworth,* contra.

April 23, 1894.   The opinion of the court was delivered by

MR. JUSTICE POPE.   Early in January, 1883, the four sons of John Harrison, deceased, as his only heirs at law, made a partition of the lands of which he died seized, and in such partition John H. Harrison received two tracts of land, aggregating 300 acres, whereon there was no dwelling house, the tracts being largely timbered lands.   In such partition the said John H., for purposes of equalization, was required to pay his brother Richard $600.   At that date the said John H. had a family, consisting of his wife, Mrs. Nannie Harrison, and several children.   On the 28th January, 1883, he purchased from H. M. Cely a tract of land, containing 106 acres, whereon was a dwelling house and out-buildings, at the price of $1,590, on a credit of one, two, and three years, and secured the payment

of such purchase money and the interest thereon by his mort-
gage of said 106 acres. This last tract was contiguous to his
other lands. In December, 1883, his dwelling house was acci-
dentally burned down. He and his family then, for a time,
lived with his brother, Edward Harrison.

On the 2d day of January, 1884, while still owing his brother
$600 for equalization in partition, and while owing his brother
·Samuel $800, he conveyed the 300 acres he had inherited from
his father, by deed therefor to his wife, Mrs. Nannie Harrison,
"and her bodily heirs begotten of me." The consideration
named in his said deed to his wife was the love and affection
he bore to his wife and their children. This conveyance was
discussed with his two brothers, Richard and Samuel, and was
actually made, as the consideration therefor, the agreement on
the part of the said Nannie Harrison that she would pay, and
secure the payment by a mortgage of said lands of the $600
due by John H. to Richard, and also the $800 due by John H.
to Samuel. During the early months of the year 1884, by reason
of advances in cash, provisions, clothing, &c., the indebtedness
to Samuel E. was increased by account from $800 to $1,050, and
also the debt of $600 to Richard was increased from $600 to
$1,000, by reason of lumber and work done. In July, 1884,
John H. and his wife and children occupied the new dwelling
house and out-buildings which had been erected on the 300
acres, after the dwelling house on the 106 acres had been
burned down.

On the 18th January, 1886, H. M. Cely having died testate,
his two sons, H. W. Cely and W. H. Cely, instituted their
action against John H. Harrison to recover the $1,590 and the
interest thereon, of which no part had been paid, as well as a
foreclosure of the mortgage on the 106 acres. On the 28th
January, 1886, Nannie E. Harrison made her sealed note to
Richard Harrison for $1,000 and interest due at one day there-
after, and also made her sealed note to Samuel E. Harrison for
the sum of $1,100 and interest due at one day thereafter, and
to secure the payment of said two sealed notes, she executed to
Richard and Samuel E. her mortgage of the 300 acres of land,
stipulating, however, in such mortgage that her right of home-

stead in said lands should not be thereby affected.   On the 8th
April, 1886, the action instituted by the Cely executors ripened
into a judgment for foreclosure of mortgage, and after the sale
of the 106 acres and its application to the mortgage debt, there
still remained a debt of $1,321.43 due by John H. Harrison to
such executors, for which judgment was entered and execution
for its collection duly issued on the 11th April, 1887, which
being wholly unpaid, was duly assigned by such Cely executors
to John Ferguson and Jacob P. Miller, composing the firm of
Ferguson & Miller.   All these matters and things occurred in
Greenville County, in this State.   The sheriff of Greenville
County returned the said execution *nulla bona.*

In February, 1889, the said Ferguson & Miller instituted
their action in the Court of Common Pleas for Greenville
County, to set aside and have cancelled, as null and void, the
conveyance of John H. Harrison to his wife, Nannie E. Harri-
son, and the two mortgages of Nannie E. Harrison to Richard
and Samuel E. Harrison.   To this action the said John H.,
Nannie E., Richard, and Samuel E. Harrison were made par-
ties defendant.   The grounds set up in the complaint, upon
which to base the relief sought by these plaintiffs, was: That
in January, 1884, when John H. conveyed to his wife the 300
acres of land, he did so with intent to hinder, delay, and defeat
the debt due to the Cely executors, as well as his other credit-
ors, and in anticipation of future indebtedness, and without
any consideration whatever, save natural love and affection,
and that such conveyance was fraudulently made by him to his
wife, who was fully cognizant of his condition; that in Janu-
ary, 1886, the defendant, Nannie E. Harrison, fraudulently,
and without any consideration, executed her two mortgages of
said land to the defendants, Richard and Samuel E. Harrison,
to secure the alleged debts of $1,100 and $1,000, the intent being
to cover up said property from the creditors of the defendant,
John H. Harrison; that the defendant, John H., has no other
property out of which the judgment can be realized, and set
forth the *nulla bona* return of the execution by the sheriff; that
the action is brought for the benefit of all the creditors, &c., of
John H. Harrison.   Of course, this complaint set forth the

dates of the debts, deeds, mortgages, judgment in foreclosure, judgment for balance of mortgage debt, and that execution was duly issued.

To this complaint the defendants, each for himself and herself, answered, flatly contradicting the plaintiff's allegations of fraud, fraudulent intent, and that the deed and mortgage were, in effect, for love and affection, or pretensive. On the contrary, they assert that it was well understood in January, 1884, that John H. Harrison was conveying his 300 acres of land to his wife, Nannie E., not for love and affection of herself and their children, but really and actually on her agreement to pay Richard and Samuel E. the debts owed them respectively by John H., and that subsequently, when Nannie E. Harrison executed her mortgage of such lands to Richard and Samuel E., it was done in good faith, and with no knowledge that John H. owed others than themselves, to secure John H.'s debt of $600 to one and $800 to the other of the said Richard and Samuel; and the addition of $400 to Richard's indebtedness and $250 to Samuel E.'s indebtedness was for such sums actually received by her of them.

It was ordered by Judge Aldrich, on March 14, 1890, that the testimony be taken by the master of Greenville, and that such master do report on all the issues of law and fact. The master's report was in favor of the defendants on every issue. Exceptions to such report were heard by Judge Izlar, and by his decree he sustained the master both in his conclusions of law and fact. However, pending the hearing of these exceptions, Mrs. Nannie E. Harrison died, leaving her husband and seven children as her heirs at law. Judge Fraser ordered that they be made parties defendant as such heirs at law, and they each answered as such heirs at law. The case is heard here on numerous exceptions to the decree of the Circuit Judge by the plaintiffs, and it remains for this court to now consider the same.

1. The first exception complains that the Circuit Judge should have sustained the exceptions by plaintiffs to the admission by the master of parol testimony, to vary the deed from John H. Harrison to Nannie E. Harrison, thereby pro-

viding a consideration for, and engrafting a trust upon, the deed. It must be very evident from the framework of the complaint itself, the testimony adduced by the plaintiffs at the hearing, and also the exceptions to the master's report and the decree of the Circuit Judge, that legal fraud is directly charged by the plaintiffs. When this fact is admitted, the propriety of the ruling of the master, as well as that of the Circuit Judge to the same point, is manifest. The *intention* of the parties to the deed is directly at issue. In such case it is competent on such a charge in the Court of Common Pleas, as it would be in the Court of General Sessions, for the defendants to show that their intent was not fraudulent, but, on the contrary, was high and honorable. The cases of *Banks* v. *Brown*, 2 Hill Ch., 558; *Henderson* v. *Dodd*, Bail. Eq., 133; *Featherston* v. *Dagnell*, 29 S. C., 45; *Brice* v. *Miller*, 35 *Id.*, 548, abundantly establish the rule that it is competent to show the real consideration of a deed, especially when fraudulent intent is attributed to the parties thereto. And the last case quoted holds that such testimony is not offered to vary the terms of the deed, but to show the real consideration of the alleged transfer. It is not offered so as to predicate the creation of a trust, but to show that the payment of grantor's debts was the purchase money covered by the deed as its consideration. The second exception is answered by the views just expressed and the authorities just quoted. And so, also, the third exception, as well as the fourth exception.

The fifth exception imputes error to the Circuit Judge in not holding that the terms of the deed from John H. Harrison to his wife, Nannie E. Harrison, and "her bodily heirs begotten by me," some of whom were *in esse* at that date, made such conveyance to the wife and bodily heirs, &c., as joint tenants or tenants in common; that the agreement to mortgage was inconsistent with such a construction of the deed, and that the testimony as to the right and duty of Nannie E. Harrison to mortgage such lands, was inadmissible. The plaintiffs, it must be assumed, framed their complaint with due care, so that the propriety of their prayer for relief might be manifested thereby. When we turn to the

complaint itself, it distinctly alleges that the conveyance in question was made to Mrs. Nannie E. Harrison, as the grantee. In fact, she is the only party defendant, as long as she lived, that the plaintiffs recognized as the grantee under such deed. Not only so, but after her death, by the plaintiffs' motion, her husband and children are alone made parties defendant as her heirs at law and next of kin. Besides all this, no question is even suggested by plaintiffs' exceptions to the master's report, squinting at this position. It was not made before the Circuit Judge who heard the case. Such a question is not passed upon in his decree. The parties and the allegations are wanting for such an investigation in the court below, and we cannot, for the first time it is made, entertain this question here. This is a Court of Appeals, and, except when jurisdiction is questioned, we must confine ourselves to an examination of errors made in the lower courts, and, of necessity, that involves the hearing of questions whose decision is said to be erroneous in the court from which an appeal is taken. The appellants must fail here.

In considering some of the remaining exceptions, it seems to us that a close attention must be paid to the facts, so that we may correctly apply the law as administered on the equity side of the court. The master allowed the claim of defendants to a homestead in this 300 acres of land, and the Circuit Judge sustained this position. Was this error? Let us see. We may say just here that this claim of homestead is the pivotal point in this case. When John H. Harrison conveyed this land to his wife on 2d January, 1884, he owed his brother Richard $600. He owed, also, his brother Samuel E. $800. But this was not all, for he owed the estate of Cely some $1,300, also. Now, it is claimed that his said conveyance to his wife, although voluntary on its face, was not so; on the contrary, it is claimed that the payment, and the mortgaging of such land to secure the payment of these two debts of $600 and $800, was the true consideration. And the defendants insist that this being a valuable consideration for such a deed, it must be sustained; and, further, that because Mrs. Harrison, in the two mortgages to Richard and

Samuel E. Harrison, reserved her homestead in such lands, therefore, the homestead exemption follows. Care must be taken to remember that not only $600 and $800 of debts to Richard and Samuel E. must be secured, but also $250 to the one and $400 to the other must likewise be protected by these mortgages.

The testimony shows that when John H. conveyed this land to his wife, it was worth $3,000. He conveyed these lands worth $3,000 to his own wife, on her agreement to pay $1,400 of his debts, or rather, he conveyed these lands to her to mortgage to his two brothers to secure $1,400 that he owed them. In order to mortgage these lands, the legal title had to vest in his wife, Mrs. Harrison. So far as a valuable consideration therefor, it was only vested, however, to secure $1,400, when it was worth $3,000. If the wife, Mrs. Harrison, could hold the property, freed from any claims of her husband, and only subject to the payment of the $1,400 of his debts, she would receive a benefit at the expense of the creditors of John H. Harrison of the sum of $1,600. Her reply is, not so, for I owe $700 besides to the brothers, which I have secured by my mortgages to them. Why was this done? Surely not for debts due by her husband, John H., but really for debts contracted by herself after the deed was executed. We are very much inclined to view this transaction between the parties to the deed, John H. and his wife, to amount to this in law, namely, that thereby John H. conveyed to his wife, and by such conveyance the husband himself was divested of title, and she was, while living, bound to hold such title, and, after her death, her heirs at law were equally bound to hold such title, first, to secure the payment to Richard of $600 and interest, and to Samuel E. of $800 and interest, and the court has ordered the land sold to pay such indebtedness, and from this decree for the sale for this purpose, no appeal has been taken by the defendants; and, second, for the creditors of John H. Harrison.

We cannot agree that John H. Harrison had any homestead rights after he sold the land. We cannot agree that Mrs. Harrison had any homestead right in such lands, because the lands were conveyed to her upon the consideration that she should

mortgage the lands to pay Richard and Samuel $1,400 and in-
terest, and that, under that deed, she can hold no rights as a
purchaser against the creditors of John H. Harrison, because
*after the $1,400 is paid, such deed is a voluntary one*, and, therefore,
inoperative to convey away from the creditors the property of
their debtor.    "A man must be just before he is generous."
See last proviso of sec. 8 of art. XIV., State Constitution,
where grants or gifts of husband to wife are required not to be
detrimental to the just claims of his creditors.    It was not in
the power of Mrs. Harrison to inject into the consideration of
the deed from John H. to herself, any power on her part to
mortgage the lands to secure her own debts.

We think the testimony very clearly shows that the debts of
Richard and Samuel E., to the extent of $600 to one and $800
to the other, were *bona fide*, and that there was no intention to
do anything more, so far as they are concerned, in the deed of
2d January, 1884, than to secure their payment, which John
H. had a right to do, under the proof here adduced.    Her title
to the whole land being necessary in order to successfully bot-
tom her mortgage of the 300 acres, to secure the $1,400 and
interest thereon, to Richard and Samuel E. Harrison, and the
sale of the land having been ordered, from which there is no
appeal, she, while living, and her heirs at law since her death,
must be decreed to hold the title to such lands so far as the
proceeds of sale, after the extinguishment of the $1,400 and
interest, which is due to Richard and Samuel E., is concerned,
in trust for the payment *pro rata* of all the debts due by John
H. Harrison at the date of such conveyance.    It follows, there-
fore, that the decree of the Circuit Court should be modified as
herein required.    So far as the views herein announced sustain
the exceptions following the sixth, so much thereof are ordered
sustained, and where such views are inconsistent with these
exceptions, that they be overruled.

It is needless to say, and we take pleasure in so holding, that
we are unable to find any evidence of actual fraud or fraudulent
intent in the parties defendant; but the law affixes its reproba-
tion upon any human conduct where the same in effect works
an injury to creditors by a deed with no consideration, or an

insufficient consideration, especially in transactions between members of the same family.

It is the judgment of this court, that the judgment of the Circuit Court be modified as herein required, and that the cause be remanded to the Circuit Court for such further orders as may be necessary.